UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RACHELLE P.,[1]

                                  Plaintiff             DECISION and ORDER

-vs-

                                                   6:24-CV-06326-CJS

COMMISSIONER OF SOCIAL
SECURITY,

                                  Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Social Security Disability Insurance ("DIB") benefits.  Plaintiff maintains that such determination must be reversed since the Commissioner's decision contains errors of law and is unsupported by substantial evidence, as more specifically set forth below.  Now before the Court is Plaintiff's application for judgment on the pleadings (ECF No.14) and Defendant's cross-motion for the same relief (ECF No. 16).  For reasons discussed below, Plaintiff's application is denied, Defendant's application is granted, and the action is dismissed.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.  The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."  20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)

2

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim. In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court

---

("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

3

cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773; *see also*, 42 U.S.C.A. § 405(g) ("The findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tejada v. Apfel*, 167 F.3d at 773 (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered." *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude*

4

*otherwise.*") (emphasis in original; citations and internal quotation marks omitted); *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court also may not rely on any *post hoc* rationalizations offered

by the Commissioner, but it may consider evidence that was evidently considered by the Administrative Law Judge ("ALJ") even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*.[; [s]ee also *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ....")."); *see also, Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole.').").

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action that is detailed in the parties' papers. The Court will therefore refer to the record only as necessary to rule on the alleged errors identified by Plaintiff, which involve the ALJ's step-four finding that Plaintiff had the RFC to perform her past work, despite her urinary incontinence.

Plaintiff testified that she began experiencing urinary incontinence in or about 2008. Tr. 563. Plaintiff nevertheless worked until 2016, including as a machine operator and electronics inspector. Tr. 555. Plaintiff stopped working due to back pain, caused by "sacroiliac disease" and "degenerative disc disease." Tr. 557. On November 18, 2020, Plaintiff applied for DIB benefits, claiming to be disabled due to "degenerative disc disease in neck and lower back," "hip spurs, right," "diabetes," "chronic cough," "sacroiliac disease," and "right rotator cuff injury." Tr. 282. Plaintiff did not list incontinence as one of her disabling impairments. *Id.*

Plaintiff provided the Commissioner with affidavits from her fiancé and from a family friend, dated November 16, 2021, and November 19, 2021, respectively, purporting to describe her functional impairments. Tr. 318-320, 322-323. Neither affidavit referred to Plaintiff having any difficulty or special needs related to her incontinence.

Plaintiff's medical treatment records contain a few, at-times inconsistent, references to her alleged incontinence. On May 24, 2016, Plaintiff reported to her physical therapist that her bladder function was normal, though "[s]he [did] notice some

7

bladder leakage with valsalva pressure." Tr. 441.[6]  Between 2018 and 2020, Plaintiff told her primary care physician that she had had "incontinence for many years." Tr. 381, 387, 393 ("She states she has had incontinence for many years and she states she is afraid to go places due to this issue.  If she wears a tampon, it seems to help.").  On September 3, 2020, Plaintiff's primary care physician indicated that Plaintiff's self-described incontinence could "possibly [be] due to bladder dropping (cystocele)," and referred Plaintiff to a urologist. Tr. 390.  However, Plaintiff subsequently cancelled her planned visit to the urologist and never rescheduled. Tr. 393.  On April 7, 2021, Plaintiff reported to an endocrinologist that she had "urgency" and "incontinence." Tr. 405 ("Genitourinary: Positive for urgency (incontinent urine).").  However, on November 4, 2022, Plaintiff visited an orthopedic specialist and reportedly denied having any "bladder or bowel issues." Tr. 541.

Plaintiff provided the Commissioner with a functional report from her primary care physician, Jennifer Bell, NP, dated October 28, 2022, that neither lists incontinence as one of Plaintiff's diagnoses, nor includes limitations related to such condition. Tr. 536-539.

Plaintiff indicated that she spends her days "trying" to do household chores, including dishes, laundry, dusting, and vacuuming, but that she needs to take frequent breaks to "sit and rest [her] back." Tr. 564.

---

[6] This evidently refers to an event that increases intrathoracic pressure on the bladder, such as coughing or sneezing. *See, e.g.*, American Urological Assoc., "Surgical Treatment of Female Stress Urinary Incontinence (SUI): AUA/SUFU Guideline, https://www.auanet.org/guidelines-and-quality/guidelines/stress-urinary-incontinence-(sui)-guideline ("SUI is the symptom of urinary leakage due to increased abdominal pressure, which can be caused by activities such as sneezing, coughing, exercise, lifting, and position change.").

8

The Commissioner denied Plaintiff's application for DIB benefits, initially and on reconsideration, and in connection therewith, agency review physicians did not find that Plaintiff had a severe impairment related to urinary incontinence. Tr. 73-91.

As of the date of the hearing before the ALJ in this matter,[7] Plaintiff evidently still had no plans to see a urologist. Tr. 558 (Plaintiff testified about upcoming plans to see various doctors, but not a urologist). Plaintiff nevertheless testified, in response to questioning by her attorney, about experiencing incontinence, stating:

> Q. Are you experiencing urinary incontinence?
>
> A. Yes.
>
> Q. How long has that been a problem for you?
>
> A. It's probably since 2008 is when it started. But the last five or six years, it's extremely gotten much worse.
>
> Q. Do you have to be able to access the bathroom on an emergency basis?
>
> A. I do, I can't hold my bladder. If I cough, it's not like just a little normal tinkle, it's like I'm completely urinating, I have to wear pads, I'm afraid to leave the house because of it, it's quite embarrassing.

Tr. 563-564.

Although Plaintiff indicated that she required "access to the bathroom on an emergency basis," she did not quantify how often she actually needed to urinate, nor does the record otherwise contain any reference to such frequency. Additionally, while Plaintiff testified that she was "afraid to leave the house" due to her incontinence, that is

---

[7] The hearing began on October 27, 2022, and continued on March 31, 2023. The continuance was necessary because the VE was unexpectedly unavailable to testify on October 27, 2022.

9

inconsistent with the functional affidavit provided by her friend, mentioned earlier, which refers to Plaintiff having back pain while doing things outside of her home, such as visiting "a large store such as Walmart," and "arriv[ing] home from running errands." Tr. 323.

On May 24, 2023, the ALJ issued a Decision finding that Plaintiff was not disabled at any time during the two-year period of alleged disability spanning February 23, 2019, through December 31, 2020. Tr. 25-33. The ALJ found, in pertinent part, regarding the first three steps of the sequential evaluation, that Plaintiff had not engaged in SGA since the alleged disability onset date; that Plaintiff had severe impairments consisting of "diabetes mellitus, obesity, hypertension, lumbar degenerative disc disease, incontinence, [and] hyperthyroidism"; and that Plaintiff's impairments, either singly or in combination, did not meet or medically equal a listed impairment. Tr. 27-29.[8]

Prior to reaching step four of the sequential evaluation, the ALJ found that Plaintiff had the RFC to perform a less-than-full range of light work, as part of which she would need access to a restroom:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform a reduced range of light work. She could lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently. During an eight-hour workday, she could sit for six hours and stand/walk for six hours. She was unable to climb ladders/ropes/scaffolds or have exposure to hazards, such as dangerous machinery or heights. She could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and she required access to a restroom.

Tr. 29.

---

[8] The ALJ found that Plaintiff's chronic cough was a non-severe impairment, and that her right shoulder impairment, about which she first complained to a doctor in October 2021, "was not a medically determinable impairment prior to the claimant's date last insured." Tr. 28.

10

The ALJ explained this RFC finding, as it pertained to Plaintiff's incontinence, by stating, in pertinent part, as follows:

> According to the claimant, . . . she requires frequent bathroom breaks.[9]
>
> ***
>
> The undersigned notes that the claimant testified that she has experienced incontinence for many years; however, this condition developed before the claimant stopped working. Progress notes do not reflect that she sought specialized treatment to address her need to use the bathroom frequently. In fact, she cancelled an appointment with urology and failed to reschedule (Exhibits C9F/3, C16F/4). She reported to providers that the use of a tampon helped her symptoms (Exhibit C1F/30).
>
> ***
>
> While the claimant's history of incontinence suggests that she would require access to a bathroom, this is generally present in workplaces. She was able to work after developing incontinence. Additionally, progress notes do not reflect urinary urgency of the frequency or severity described by the claimant.
>
> ***
>
> Based on the foregoing, the undersigned finds that . . . [d]ue to incontinence, she required access to a restroom [during the alleged period of disability].

Tr. 30, 31.

The ALJ then found, at the fourth step of the sequential evaluation, that with the RFC described earlier, Plaintiff could perform her past relevant work as an electronics inspector. Tr. 31-32. The ALJ explained this finding, as it pertained to Plaintiff's incontinence, as follows:

> The vocational expert testified that a person with the residual functional capacity detailed above (though I had not noted bathroom access in the hypothetical) would be able to perform the claimant's past relevant work, as

---

[9] Despite the ALJ's references to Plaintiff claiming to need to use the bathroom frequently, the Court, as mentioned earlier, sees no indication in the record that Plaintiff actually stated how frequently she typically used the bathroom to urinate. Rather, she indicated that she needed "emergency access" to a restroom since she could not "hold her bladder" at times, such as when she coughed.

11

> it is generally performed in the national economy and I find this testimony persuasive.
>
> While the hypothetical posed to the vocational expert did not include a provision requiring bathroom access, the work at issue is not outside or traveling work and workplace bathrooms would be generally present in the workplace.
>
> As the claimant's residual functional capacity allows her to perform light physical exertion involving the above postural and other restrictions, she remains capable of performing her light past relevant work, as it is generally performed in the national economy.

Tr. 32. The ALJ therefore concluded that Plaintiff was not disabled during the relevant period. Tr. 32-33. Plaintiff appealed, but the Appeals Council declined to review the ALJ's decision, thereby making the ALJ's decision the Commissioner's final decision.

In this action, Plaintiff maintains that the Commissioner's decision must be reversed since it did not properly account for her urinary incontinence. More specifically, Plaintiff asserts that the ALJ's step-four finding, that she could perform her past work, is erroneous since it is based on answers given at the hearing by the VE, in response to hypothetical questions which did not reference her incontinence:

> The ALJ determined that Ms. Poole could perform her past relevant work as an electronics inspector. Tr 31. However, the ALJ admitted that the above-residual functional capacity was not the same as the hypothetical posed to the vocational witness at the administrative hearing. Tr 32. The ALJ acknowledged that the hypothetical posed to the vocational witness did not include a provision requiring bathroom access. *Id.* The ALJ claimed that this oversight was irrelevant as Ms. Poole's past relevant work was not outside or traveling, and that workplace bathrooms would be generally present in the workplace. *Id.* As such, the ALJ found that Ms. Poole was not disabled. Tr 32-33.

12

> The administrative hearing was held on March 31, 2023. Tr 39. The vocational witness began by classifying Ms. Poole's past relevant work, including her job as an electronics inspector. Tr 53. The ALJ then posed a hypothetical question to the vocational witness that mirrored the residual functional capacity except it did not include "and she required access to a restroom." Tr 58. The ALJ offered a second hypothetical which was the same as the first, but added occasional reaching with the right dominant upper extremity. *Id.* The vocational witness testified that Ms. Poole could return to her past relevant work based on either hypothetical. Tr 58-59. The ALJ did not offer any other hypothetical questions that involved Ms. Poole's need for restroom access.
>
> ***
>
> The ALJ's residual functional capacity was more restrictive than the hypothetical it was based on. The ALJ included an additional limitation in the residual functional capacity that was not present in the hypothetical question posed to the vocational witness. Despite the limitation being omitted to the vocational witness, the ALJ still relied on the vocational witness' testimony as substantial evidence that Ms. Poole was capable of returning to her past relevant work. Because the ALJ's hypothetical did not accurately reflect Ms. Poole's ability to perform basic work activities, it was an error for the ALJ to rely on that testimony. More importantly, the ALJ's error significantly prejudiced Ms. Poole's claim as it is unclear whether she could sustain competitive employment.

ECF No. 14 at pp. 3-4. In sum, Plaintiff maintains that the VE's testimony cannot constitute substantial evidence to support the ALJ's step-four finding, since the ALJ's RFC finding was "more restrictive" than the questions posed to the VE, inasmuch as the hypothetical questions did not ask the VE to consider that the hypothetical claimant would need access to a restroom. *Id.* at p. 5.

Relatedly, Plaintiff further contends that reversal is required since the ALJ's RFC finding was too vague regarding Plaintiff's need for access to a restroom:

> The ALJ found Ms. Poole's incontinence to be a severe impairment. Tr 27. There can be no debate about that. As such, when crafting the residual

13

> functional capacity, the ALJ included the need for access to a restroom. Tr 29. . . . [I]t is unclear whether that limitation was sufficient. The ALJ's inclusion of a need for access to a restroom was unclear. The limitation, as stated in the residual functional capacity, was vague. It did not address the frequency or duration of which Ms. Poole would need to have ready access to a restroom.
>
> ***
>
> [T]he ALJ's inclusion of the need for ready access to the restroom was vague and failed to address key components of Ms. Poole's potential issues with incontinence. For example, when addressing her need for ready access to the restroom, the ALJ was silent on the frequency and duration of which she will need to use the restroom. Those critical factors would be necessary to determine whether Ms. Poole's severe incontinence would have significantly affected her ability to work. The ALJ's vague limitation failed to address those factors and that is more than harmless error.

ECF No. 14 at p. 7, 8-9.

The Commissioner disagrees and contends that his decision is free of legal error and supported by substantial evidence.

The Court has carefully considered the parties' submissions.

## DISCUSSION

Plaintiff contends that the ALJ erred in two respects: First by making a step-four finding that was not completely supported by the VE's testimony; and second, by indicating in the RFC that Plaintiff needed access to a bathroom, without specifying the frequency and duration of her expected bathroom usage. However, the Court finds no merit to either argument.

Plaintiff's first argument lacks merit since it rests on a faulty premise, which is that the ALJ's RFC finding had to be based entirely on the testimony of a VE. There is no such requirement. *See, e.g., Deborah M. v. Kijakazi*, No. 1:20-CV-1600 (FJS), 2022 WL

2274780, at *11 (N.D.N.Y. June 23, 2022) ("'While an expert is often called upon to explain the requirements of particular jobs ... step four of the analysis does not require that an ALJ consult an expert.'" *Rebecca H. v. Comm'r of Soc. Sec.*, No. 6:20-CV-01058 (TWD), 2022 WL 293854, *8 (N.D.N.Y. Feb. 1, 2022) (Dancks, M.J.) (quoting *Petrie*, 412 F. App'x at 409; *Hackett v. Comm'r of Soc. Sec.*, No. 5:16-692, 2017 WL 1373893, at *6 (N.D.N.Y. Apr. 13, 2017) ([finding that] "[a]t step four of the disability analysis, the ALJ has the option to rely on [vocational expert] testimony")); *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) ("Step Four findings need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous.") (citation and internal quotation marks omitted).

Furthermore, even assuming *arguendo* that there was such a requirement, the Court would nevertheless find that any error regarding the hypothetical questions posed to the VE was harmless here, since "access to a restroom" was implicit in the ALJ's question to the VE, inasmuch as employers in the United States are required by federal law to provide sanitary facilities, including "immediately-available toilet facilities (restrooms)," to their employees.[10] The omission of this condition from the questions

---

[10] *See, e.g.,* website of United States Department of Labor, Occupational Safety and Health Administration, "Restrooms and Sanitation Requirements," https://www.osha.gov/restrooms-sanitation ("OSHA requires employers to provide all workers with sanitary and immediately-available toilet facilities (restrooms). The sanitation standards (29 CFR 1910.141, 29 CFR 1926.51 and 29 CFR 1928.110) are intended to ensure that workers do not suffer adverse health effects that can result if toilets are not sanitary and/or are not available when needed."); *see also, id.* ("Employers must provide at least the minimum number of toilet facilities, in toilet rooms separate for each sex (see the table in 29 CFR 1910.141(c)(1)(i)), and prompt access to the facilities when needed. Restroom access frequency needs may vary significantly from worker to worker, and may be affected by medications, fluid intake, air temperature and other factors."); *see also, Joseph C. v. Kijakazi*, No. 2:20-CV-1166, 2021 WL 4317184,

posed to the VE would only be relevant if Plaintiff had established that she required more-than-normal access to a restroom, which, as discussed further below, she did not do.

The Court also finds no merit to Plaintiff's related contention that the RFC finding was impermissibly vague or unsupported by substantial evidence insofar as it failed to specify the frequency and duration of Plaintiff's expected bathroom usage.  The RFC finding that Plaintiff "required access to a restroom" directly tracked Plaintiff's hearing testimony that she needed "access [to] the bathroom on an emergency basis," since things like coughing could cause her to lose control of her bladder. Tr. 563-564 ("I can't hold my bladder.  If I cough, it's not like just a little normal tinkle, it's like I'm completely urinating, I have to wear pads[.]").[11]  The Court is hard pressed to say that the RFC condition is impermissibly vague, when it reflects exactly what Plaintiff said she needed.

The ALJ seems to have reasonably interpreted the evidence as indicating that Plaintiff needed ready access to a restroom in the event that she coughed, or that some other similar type of event caused her to lose control of her bladder.  In doing so, the ALJ found that the evidence did not support a finding that Plaintiff generally "require[d] frequent bathroom breaks."

On this point, the Court observes preliminarily that Plaintiff never actually stated the frequency of her bathroom usage.  Indeed, the Court has carefully reviewed the hearing testimony on this point, Tr. 51, 563-564, and Plaintiff never indicated that she

---

at *9 (D.N.J. Sept. 23, 2021) (When testifying concerning a claimant with ulcertative colitis, VE observed that access to a toilet was required by law: "[P]roximity to a toilet, I believe the OSHA regulations are such [phonetic] that there needs to be proximity to a toilet.").

[11] This testimony linking Plaintiff's loss of bladder control with events such as coughing is consistent with the treatment note referenced earlier, in which the physician reported that Plaintiff "notice[d] some bladder leakage with valsalva pressure." Tr. 441.

"required frequent bathroom breaks." Rather, she testified only that she "couldn't hold her bladder," and that she was "afraid to leave the house because of it," which the ALJ apparently interpreted as meaning that she required frequent bathroom breaks. In fact, though, Plaintiff never actually stated that she needed to use the restroom with any predictable or unusual degree of frequency, nor is there any indication in the record that she regularly needed to spend any unusual length of time in the restroom due to her incontinence.[12]

But, again, even assuming *arguendo* that Plaintiff *had* testified that she required frequent bathroom breaks, the ALJ found that such claim was not supported by the evidence as a whole. *See, e.g.*, Tr. 31 ("[P]rogress notes do not reflect urinary urgency of the frequency or severity described by the claimant."). Plaintiff, who had the burden of proof at step four of the sequential evaluation,[13] has not directed this Court to any evidence that she required greater access to a restroom than what the ALJ found in his RFC determination,[14] which was essentially normal access, nor has she otherwise shown

---

[12] This makes the instant case factually distinguishable from other cases from this Circuit in which Courts have ruled that RFC findings that allowed simply for restroom access were inadequate, where there was evidence that the frequency or duration of the claimant's bathroom usage might be preclusive of work. *See, e.g., Crystal C. v. Commissioner*, 22-CV-6358MWP, 2003 WL 4781905 at *3 (W.D.N.Y. Jul. 27, 2023) ("Considering the facts of this case, I find that, although the ALJ concluded that plaintiff would require 'ready access to restroom facilities,' he should have also evaluated whether Plaintiff's interstitial cystitis could be accommodated by customary breaks or whether her symptoms would cause her to be off-task to a degree that could be work preclusive.").

[13] *See, McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) ("The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four.") (citation and internal quotation marks omitted).

[14] *See, Kinder v. Colvin*, No. 13-CV-06368 MAT, 2014 WL 4184820, at *6 (W.D.N.Y. Aug. 21, 2014) ("[T]he ALJ found that Plaintiff had the RFC to perform sedentary work with certain exceptions, one being that "access to a restroom facility be readily available." Plaintiff claims that this determination fails to take into account the frequency and duration of the restroom breaks. Plaintiff maintains that, while the ALJ acknowledged Plaintiff's urinary problem as a severe impairment, he fails to set forth the manner in which the bathroom breaks would affect Plaintiff in the workplace. The Court finds no merit to this argument because, as the ALJ noted in his decision, there is no medical evidence in the record to substantiate

that no reasonable factfinder could have reached the same conclusion as the ALJ, that she was able to perform her past work as an electronics inspector. Consequently, the Court finds no merit to Plaintiff's assertion that the step-four finding is unsupported by substantial evidence.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 14)[15] for judgment on the pleadings is denied, Defendant's cross-motion (ECF No. 16) for the same relief is granted, and this action is dismissed. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
       September 30, 2025

ENTER:

*/s/ Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge

---

Plaintiff's specific allegation that his urinary problem causes him to urinate more frequently (or for a longer duration) than normal.") (citations to record omitted).

[15] Note: ECF No. 14 is Plaintiff's Memorandum of Law. Plaintiff did not actually file a separate "motion," and consequently, the Court refers to ECF No. 14 as Plaintiff's motion for judgment on the pleadings.